

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2004

# Foster v. New Castle Area Sch

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2106

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Foster v. New Castle Area Sch" (2004). *2004 Decisions.* Paper 823.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/823

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-2106
_____

LEANNE M. FOSTER,

Appellant,

v.

NEW CASTLE AREA SCHOOL DISTRICT; JOSEPH A. MARTIN, JR.;
THOMAS DIMUCCIO; FRANK BONFIELD; JOSEPH FARRIS;
JOHN ALLAN JOSEPH; MARK MASTRANGELO; PETER YERAGE

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 01-cv-00868)
District Judge:  The Honorable Donetta W. Ambrose

_____

Submitted Under Third Circuit LAR 34.1(a)
January 30, 2004

BEFORE: NYGAARD and FUENTES, Circuit Judges.
and O'NEILL,* District Judge.

_____

* Honorable Thomas N. O'Neill, Jr., Senior District Judge for the United States
District Court for the Eastern District of Pennsylvania, sitting by designation.

(Filed April 16, 2004 )

_____

OPINION OF THE COURT

_____

NYGAARD, Circuit Judge.

Leanne Foster challenges the District Court's grant of summary judgment in favor of Appellees (collectively, "the School District defendants") and its denial of her motion for partial summary judgment. We will affirm.

I.

Foster was a high school biology teacher in the New Castle Area School District (the "School District"). By the relevant period, she was certified as a secondary school administrator and held a masters degree. In 1999, the School District's only high school principal announced that he planned to resign his position at the end of the school year. The School District filled his position through a well-established policy of re-assigning a current administrator into that position. After another re-assignment, the two assistant principal positions at the high school were vacant as of June 1999.

Foster expressed an interest in both these positions. Under School District policy, and the Pennsylvania School Code, the School District Board was responsible for

2

hiring people to fill these positions. *See* 24 Pa. Cons. Stat. § 5-508. However, the School District delegated the authority to determine who would be interviewed for these positions to the superintendent's office. Within that office, the assistant superintendent, Nicholas DeRosa, was responsible for reviewing each qualified candidate's file together with any additional information the candidate submitted and then making the determination as to who should be interviewed. If the superintendent were available, DeRosa would consult with him, but such consultation was not necessary.

The School Board's Education Committee would then interview the candidates selected by DeRosa. During his deposition, DeRosa testified that he could not remember a single time in the past thirteen years when the School Board had come back to him to request additional interviewees. Thus, for all practical purposes, DeRosa determined who would be interviewed for a position, and the School Board simply selected from among those interviewees.

In this case, DeRosa reviewed the qualified candidates and recommended that five individuals be interviewed for the five available positions (two secondary administrative positions and three elementary positions). Foster was not among the five selected for interviews. The Education Committee interviewed these five individuals and hired all five. DeRosa testified that all candidates were qualified and that he made his decision based, in part, on the extra-curricular activities in which each candidate

3

participated. Based on these criteria, Foster was not chosen to be interviewed and, therefore, was not hired.

After not being hired for the assistant principal position she sought, Foster secured an offer to be an administrator in a neighboring school district. She then tendered her resignation letter to the School District. In that letter, she offered her resignation "effective immediately." App. at 416. She sent the letter on December 6, 1999, one day after she was offered her new position. On December 15th her resignation was accepted, she was told of this on December 16th, and her resignation became effective on December 17th.

After receiving word that the School Board had accepted her resignation, Foster met with the superintendent to discuss her surprise that she would not be teaching through the end of 1999. During that conversation, Foster claims the superintendent made threats to reveal to her new employer the fact that she had filed an EEOC complaint against the School District.

Foster filed this suit alleging sexual discrimination and retaliatory firing. After discovery, Foster filed for partial summary judgment on her sexual discrimination claims and the School District defendants filed for summary judgment on all claims. The District Court denied Foster's motion and granted summary judgment in favor of the School District defendants.

II.

4

A.

We have jurisdiction over this appeal under 28 U.S.C. § 1291 and exercise *de novo* review over a district court's decision on a motion for summary judgment. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 602-03 (3d Cir. 2002).

We first address Foster's sexual discrimination claims. To succeed on those claims, Foster can proceed under either of two methods. *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778-79 (3d Cir. 1994). Under the *Price Waterhouse* analysis, a plaintiff presents direct evidence that a decision-maker had a discriminatory bias. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989). Under *McDonnell Douglas*, a plaintiff makes out a *prima facie* case of discrimination, and then the burden shifts to the defendant to show a non-discriminatory reason for its decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden then shifts back to the plaintiff to show, with additional evidence, that this non-discriminatory reason was pretextual. *Id.* at 804.

Under either analysis, it is necessary to determine who the decision-maker or makers were. This is especially important because, while discriminatory statements made by decision-makers with regard to the employment actions at issue are very strong evidence for a plaintiff, such statements made by non-decision-makers or individuals who played no part in the decision are inadequate to support an inference of discrimination. *Gomez v. Allegheny Health Serv's Inc.*, 71 F.3d 1079, 1085 (3d Cir. 1995).

5

The District Court determined that DeRosa was the appropriate decision-maker. Foster argues that conclusion is wrong because the School Board had the authority to hire, and any delegation of that authority to DeRosa would violate the School Code. Foster's argument, however, misses the point both legally and factually.

In *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 290-91 (4th Cir. 2004), the Court of Appeals for the Fourth Circuit had to determine who is a decision-maker under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. Although couched in the more common circumstances of a plaintiff attempting to have a lower-level supervisor who participates in a decision be considered a decision-maker, the Fourth Circuit's analysis is both applicable to this case and persuasive. After determining that a decision-maker cannot simply retain "rubber stamp" authority in order to insulate lower-level supervisors from "decision-maker" status, the court held that, "[r]egarding adverse employment actions, an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision." *Id.* at 291. We agree with this holding and, applied to this case, it unquestionably identifies DeRosa as the decision-maker.

DeRosa was the person who decided which candidates would be interviewed. In this case, and under the general practice of the School Board, the Education Committee interviewed and hired those people recommended by DeRosa.

6

Thus, DeRosa was the person who made the decision that prevented Foster from interviewing for the job. In spite of the unrebutted evidence to this effect, Foster attempts to use the allegedly discriminatory statements of School Board members as evidence of discriminatory animus. These statements, taken in a light most favorable to Foster, are simply statements by non-decision-makers that are insufficient to support Foster's case. *Gomez*, 71 F.3d at 1085.

Based on this analysis, the District Court was correct in concluding that DeRosa was the decision-maker. With that conclusion, the remainder of the analysis is straightforward. The School District defendants conceded that Foster presented a *prima facie* case of sex discrimination. They then responded with legitimate reasons for DeRosa's decision. Namely, DeRosa considered extra-curricular activities and determined that other candidates were more qualified than Foster.

In response to this facially valid and reasonable explanation, Foster argues that there was a "corporate culture" of discrimination, citing various statements allegedly made by board members and the School District's failure to promote another female employee to a secondary school administrative position and that employee's subsequent EEOC complaint. The problem with Foster's "corporate culture" argument is that she has no proof to support it. Foster only came forward with a few stray remarks by non-decision-makers about the School District's desire to keep women from secondary school administrative positions. From these remarks, Foster speculates that DeRosa was aware

7

that the School Board was biased against women with respect to these positions.  Foster

has no proof that such a culture actually existed (especially since women hold

administrative positions in elementary schools) or that DeRosa was aware of such a

culture.

We agree with the District Court that Foster's mere recitation that gender

discrimination was the cause of DeRosa's decision does not make it so, and she has failed

to present any material evidence that DeRosa's explanation of his decision was pretextual.

For this reason, the District Court was correct in denying Foster's motion for partial

summary judgment and in granting the School District defendants' motion.

Foster's attempt to support her sexual discrimination claims under a

disparate impact theory also fails. Foster argues that the School District has a preference

for hiring coaches as principals in the secondary schools and that this preference has a

disparate impact on women.  In order to succeed under this theory, Foster must initially

show that a facially neutral policy results in a discriminatory hiring pattern.  *Lanning v.*

*SEPTA*, 181 F.3d 478, 485 (3d Cir. 1999).  To satisfy this burden, Foster attempts to rely

on statistical evidence, presenting a list of all principals and assistant principals between

1970 and 1999.  This list indicates that all four high school principals during this time

were men and that eight of the ten assistant principals were men.

In *Narin v. Lower Merion Sch. Dist.*, this Court acknowledged that lists of

hired employees that tend to show they are primarily under forty years of age was

8

irrelevant to an age discrimination claim without other statistical evidence showing that an equal number of over-forty people applied. 206 F.3d 323, 335 (3d Cir. 2000). In this case the same logic controls. Showing that there have been more male administrators than female administrators over the past three decades without evidence regarding the pools of applicants does not prove that a preference for coaches results in discrimination against women.

B.

Foster's remaining claims allege retaliation based on her filing of an EEOC charge. In order to succeed on this claim, Foster must, among other things, show that she suffered an adverse employment action. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. 1997). Foster argues that she suffered such an adverse employment action because the School District accepted her resignation more promptly than she anticipated. This argument is without merit. Foster tendered a letter of resignation, "effective immediately," to the School Board. Although she thought the Board would allow her to remain in her position until the students' December break, it did not. It strains logic to argue that Foster can tender an immediate resignation and then claim that the School Board's acceptance of that resignation at an early date is an adverse employment action. Without such an action, she cannot prevail on her retaliation claims. *Id*.

9

Foster also argues, for the first time on appeal, that the superintendent's threat to reveal her EEOC charge to her new employer is sufficient evidence to preclude summary judgment on her retaliation claims. Foster did not raise this argument before the District Court except in her complaint. Therefore, the District Court held, in a footnote, that she had waived this argument. On appeal, Foster argues she was prevented from raising this argument because of the page limitations placed on briefs by the District Court. She asks that this Court therefore ignore her failure to brief this issue on summary judgment and consider it on appeal.

This Court will not consider arguments that were not raised before the District Court, unless the party seeking to raise the arguments presents a compelling circumstance requiring such consideration. *Srein v. Frankford Trust Co.*, 323 F.3d 214, 224 n.8 (3d Cir. 2003). Here, Foster's "compelling circumstances" are that the District Court's page limitations on briefs prevented her from raising this argument, and that she wrote a letter to the District Court advising it that "a large number of outstanding issues" remained after summary judgment briefing. If page limitations on briefs were sufficient "compelling circumstances" to overcome our general rule of not addressing arguments that were not first raised before the District Court, then this exception would truly swallow the rule. We hold that the circumstances presented by Foster are not sufficient to overcome her failure to raise this argument before the District Court, and we therefore will not address this argument.

III.

For the foregoing reasons, we will affirm the decision of the District Court.